# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
CECILIA CARDENAS              :    Civ. No. 3:16CV01216(SALM)
                              :
v.                            :
                              :
NANCY A. BERRYHILL,           :
ACTING COMMISSIONER OF        :
SOCIAL SECURITY               :    August 23, 2017
                              :
------------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Cecilia Cardenas ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") under the Act. Plaintiff has moved to reverse the decision of the Commissioner, or in the alternative, for remand to the Social Security Administration for a new hearing. [Doc. #26].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #26]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #28]** is **GRANTED.**

# I.   __PROCEDURAL HISTORY__[1]

Plaintiff filed an application for DIB on March 28, 2013, alleging disability beginning January 1, 2008. See Certified Transcript of the Administrative Record, compiled on September 12, 2016, (hereinafter "Tr.") 168-174. At the administrative hearing, plaintiff amended her alleged disability onset date to March 28, 2012. See Tr. 56. Plaintiff's application was denied initially on June 5, 2013, see Tr. 128-31, and upon reconsideration on July 3, 2013. See Tr. 139-47.

On July 30, 2014, plaintiff, represented by Attorney Kerin Woods, appeared and testified through an interpreter at a hearing before Administrative Law Judge ("ALJ") Deirdre Horton. See Tr. 52-81. On September 17, 2014, the ALJ issued an unfavorable decision. See Tr. 15-31. On July 1, 2016, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's September 17, 2014, decision the final decision of the Commissioner. See Tr. 1-9. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff timely filed this action for review and now moves to reverse the Commissioner's decision, or in the alternative,

---

[1] With her motion, plaintiff filed a Stipulation of Facts. See Doc. #27.

to remand for a new hearing. [Doc. #26]. On appeal, plaintiff argues:

1. The ALJ improperly assessed the medical evidence of record;

2. The ALJ erred at step two of the sequential evaluation;

3. The ALJ erred in assessing plaintiff's residual functional capacity ("RFC"), and the ALJ's RFC determination is not supported by substantial evidence;

4. The ALJ erred in relying exclusively on the Medical-Vocational Guidelines (the "Grids") without obtaining vocational expert testimony; and

5. The ALJ's credibility determination is not supported by substantial evidence.

See Doc. #26-1 at 1-2. As set forth below, the Court finds that the ALJ did not err as contended by plaintiff, and that the ALJ's determination is supported by substantial evidence.

## II.  **STANDARD OF REVIEW**

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation

omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by

substantial evidence in the record and were based on a correct

legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir.

2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507

(2d Cir. 2009)). "[W]hether there is substantial evidence

supporting the appellant's view is not the question here;

rather, we must decide whether substantial evidence supports the

ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58,

59 (2d Cir. 2013) (citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is

under a disability is entitled to disability insurance benefits.

42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore

entitled to benefits, a plaintiff must demonstrate that he or

she is unable to work after a date specified "by reason of any

medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12

months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments

must be "of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful

work which exists in the national economy." 42 U.S.C.

§423(d)(2)(A); 20 C.F.R. §§404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The RFC is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

IV.  **THE ALJ'S DECISION**

Following the above-described five-step evaluation process,
the ALJ concluded that plaintiff was not disabled under the Act.
See Tr. 31. At step one, the ALJ found that plaintiff had not
engaged in substantial gainful activity during the period from
the amended alleged onset date of March 28, 2012, through
September 30, 2012, the date of last insured. See Tr. 23. At
step two, the ALJ found that plaintiff had the severe
impairments of "degenerative disc disease, mild lumbar and
cervical; obesity; and fibromyalgia." Tr. 23. The ALJ determined
that plaintiff's thyroid disorder, carpal tunnel syndrome,
intermittent numbness in her hands, and affective disorder were
non-severe impairments. See id. at 24.

At step three, the ALJ found that plaintiff's impairments,
either alone or in combination, did not meet or medically equal
any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P,
App. 1. See Tr. 25-26. The ALJ specifically considered Listings
1.00 (musculoskeletal system); 1.04 (disorders of the spine);
1.02 (major dysfunction of a joint), 14.09 (inflammatory
arthritis); and 12.00 (adult mental disorders). See Tr. 25-26.
Before moving on to step four, the ALJ found plaintiff had the
RFC to perform the full range of light work as defined in 20
C.F.R. §404.1567(b). See Tr. 26.

At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work as a cleaner. <u>See</u> Tr. 30. At step five, after considering plaintiff's age, education, work experience and RFC, and after consulting the Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found that there existed jobs in significant numbers in the national economy that plaintiff could perform. <u>See</u> Tr. 30-31.

## V.   <u>DISCUSSION</u>

Plaintiff raises five arguments in support of reversal or remand. The Court will address each argument in turn.

### A.    **Assessment of the Medical Evidence of Record**

Plaintiff takes issue with the ALJ's assessment of the medical evidence of record. Specifically, plaintiff contends that in classifying plaintiff's degenerative disc disease as "mild," the ALJ failed to consider objective medical evidence, treatment records, and plaintiff's own reports of pain. <u>See</u> Doc. #26-1 at 6-8. Plaintiff also argues that the ALJ erred by rejecting a portion of the consultative examiner's opinion, and by substituting her own opinion for the consultative examiner's opinion. <u>See</u> <u>id.</u> at 8-9.

### 1.    *Degenerative Disc Disease*

Plaintiff contends that the ALJ erred in classifying plaintiff's degenerative disc disease as "mild." Doc. #26-1 at 6. In so doing, plaintiff argues, the ALJ failed to consider: (1) changes observed in a January 2014 MRI report; (2) the 2014 treatment records of Dr. Kanishka Rajput; and (3) reports of plaintiff's pain. See id. at 6-7. Defendant responds that the ALJ's decision does indicate that she considered Dr. Rajput's treatment records, and the January 2014 MRI is beyond the relevant time period for plaintiff's DIB application. See Doc. #28-1 at 6-7. Defendant further contends that the ALJ properly considered, and discounted, plaintiff's allegations of pain. See id. at 8.

The ALJ's decision reflects that she properly assessed the medical evidence of record regarding plaintiff's degenerative disc disease. As the ALJ noted, the relevant timeframe for this DIB application is from the amended alleged onset date of March 28, 2012, through the date of last insured, September 30, 2012. See Behling v. Comm'r of Soc. Sec., 369 F. App'x 292, 294 (2d Cir. 2010) (stating that to be entitled to DIB, plaintiff "is required to demonstrate that she was disabled as of the date on which she was last insured" (citing 42 U.S.C. §423(a)(1)(A))). While plaintiff alleges that the MRI from January 2014 showed

new impairments, this evidence is one year and four months beyond the date plaintiff was last insured, and is therefore outside the relevant timeframe for plaintiff's DIB claim.[2] The records of Dr. Rajput also fall outside the pertinent timeframe and are therefore not relevant to the inquiry of whether plaintiff was disabled on or before the date she was last insured. See Shook v. Comm'r of Soc. Sec., No. 1:12CV185(TJM), 2013 WL 1213123, at *7 (N.D.N.Y. Jan. 25, 2013) (determining that evidence after the date of last insured was not relevant, as the "narrow inquiry here is whether the Commissioner's conclusion with respect to the nature and extent of Plaintiff's impairment during the relevant time period was supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (quotation marks and citation omitted)), report and recommendation adopted, No. 1:12CV185, 2013 WL 1222008 (N.D.N.Y. Mar. 25, 2013).

---

[2] In support of her claim that this evidence is relevant, plaintiff asserts that the January 8, 2014, MRI was performed "within four month[s] of the date of onset." Doc. #26-1 at 6. Plaintiff also contends, several paragraphs later, that this same MRI was performed "within four months of the date last insured." Id. at 7. Both assertions are incorrect. The January 8, 2014, MRI was conducted one year and four months after the date plaintiff was last insured, and almost two years after the alleged date of onset. See Tr. 407-10; see also Doc. #27 at 9 (stipulation that MRI was performed on January 8, 2014).

Nevertheless, the ALJ's decision clearly reflects that she did consider this medical evidence from 2014. The ALJ stated: "The claimant's MRI from January 2014 showed evidence of multilevel spondylosis; however, treatment consisted of only additional epidural injections (Exhibit 8F and 17F). Further, EMG testing from January 2014 was negative for testing on the lower right extremity (Exhibit 9F/7-8)." Tr. 28; cf. Doc. #27 at 9.[3] Despite plaintiff's contention, the ALJ's decision also reflects that she considered the treatment notes of Dr. Rajput at the Anesthesia Associates of New London. See Tr. 28 (citing to Exhibit 17F, and noting the course of treatment plaintiff underwent following her January 2014 MRI).

Further, the ALJ's assessment of these records has substantial support in the record. Plaintiff's treating

---

[3] Plaintiff also claims that the ALJ rejected the "significance" of the January 2014 MRI by erroneously finding that the treatment following the MRI consisted of "only one additional epidural injection." Doc. #26-1 at 7. Plaintiff purports to quote the ALJ's decision on this point, and argues that, in fact, plaintiff had a series of three additional lumbar steroid injections following the MRI. See id. at 7-8. However, plaintiff misquotes the ALJ's decision. As noted above, the ALJ correctly indicated that plaintiff's treatment after the MRI "consisted of only additional epidural injections." Tr. 28 (citations omitted). Thus, it was the type of treatment (and perhaps the lack of more aggressive treatment) rather than the number of injections that apparently factored into the ALJ's decision to discount the results of plaintiff's 2014 MRI.

physician, Dr. Helar Campos, noted in February 2014 that upon examination, plaintiff exhibited no tenderness in her neck or cervical spine, and that plaintiff had agreed to injections for her "chronic back pain." Tr. 412. Dr. Rajput's treatment notes from March 2014 indicate a plan to "schedule the patient for a trial of lumbar epidural steroid injections since this has provided her with excellent benefit in the past." Tr. 503. Further, while plaintiff contends that she experienced little improvement following the treatment, in June 2014, plaintiff reported short-term pain relief from the course of injections and from Advil. See Tr. 542. Dr. Rajput's June 2014 examination revealed improvement in plaintiff's flexibility; plaintiff exhibited normal flexion, extension and rotation of the lumbosacral spine. See Tr. 543. Dr. Rajput prescribed an additional course of injections to address plaintiff's complaints of pain. See Tr. 544. Thus, there is no merit to the contention that the ALJ erred in her consideration of medical evidence of record from beyond the date of last insured.

Finally, plaintiff argues that the ALJ failed to fully assess plaintiff's "conditions" of joint pain, polyarthralgia, and "cervical and lumbar conditions," including her "worsening symptoms as reported to her primary care physician, Dr. Campos, when seen in February and April 2012 when she reported chronic

back pain." Doc. #26-1 at 7-8. However, the ALJ's decision specifically references plaintiff's complaints of back and joint pain in conjunction with the treatment notes of Dr. Campos and Dr. Sandeep Varma. See Tr. 27. The ALJ noted plaintiff's subjective complaints of neck pain, back pain and joint pain in April and August 2012, but found that "[p]hysical examinations prior to her date last insured were within normal limits and the claimant was able to ambulate with a normal gait." Id.; cf. Doc. #27 at 7-8. The ALJ's decision also reflects consideration of plaintiff's visits with Dr. Varma and Dr. Edward Hargus, stating that the treatment plaintiff underwent "provided some relief from her back symptoms" and treatment notes indicate "improvement in symptoms" and "a negative rheumatoid factor test." Tr. 28 (citations omitted). Thus, the ALJ provided sufficient support for her assessment of the medical evidence related to plaintiff's back impairments.

The ALJ properly considered the medical evidence of record regarding plaintiff's degenerative disc disease, and the Court finds no error on this point.

### 2. *The Opinion of the Consultative Examiner*

Plaintiff contends that the ALJ improperly rejected consultative examiner Dr. Herbert Reiher's opinion regarding plaintiff's capacity to lift. See Doc. #26-1 at 8-9. In doing

so, plaintiff argues, the ALJ substituted her own opinion for that of Dr. Reiher's, thereby committing reversible error. See id. Defendant argues that the ALJ properly gave less weight to this aspect of Dr. Reiher's opinion, as the opinion is both internally inconsistent and inconsistent with the medical evidence of record. See Doc. #28-1 at 3. Defendant also contends that the ALJ did not substitute her own judgment for Dr. Reiher's opinion, but rather relied on the objective findings and medical evidence of record. See id. at 4-5.

In assessing plaintiff's RFC, the ALJ considered the consultative examination performed by Dr. Reiher on May 30, 2013. See Tr. 29; see also Tr. 345-47. After taking plaintiff's own history of her functional status, where she noted that she "can lift about 10 pounds," Tr. 346, Dr. Reiher opined that plaintiff "can lift up to 10 pounds without any discomfort[.]" Tr. 347. The ALJ discounted this portion of Dr. Reiher's opinion, assigning it "partial weight," due to plaintiff's "normal examination, which is consistent with the objective findings prior to the claimant's date of last insured." Tr. 30.

The ALJ's assessment of Dr. Reiher's opinion is supported by substantial evidence. As the ALJ noted, Dr. Reiher's examination of plaintiff was "essentially normal." Tr. 29. During his examination, he noted that plaintiff's "back and

spine are nontender to palpitation;" her "gait normal;" her

"heel-to-toe walking normal;" her "squatting limited due to

discomfort;" and that the "[l]umbar spine forward flexion

achieved was eighty degrees." Tr. 347. He found that plaintiff's

legs had "good range of motion" and "[s]upine and sitting

straight leg raising was normal." Id. Dr. Reiher found "no

objective functional limitations on exam." He continued:

> There was some subjective discomfort and limited motion
> with activities such as squatting. I find the patient
> can lift up to 10 pounds without any discomfort and there
> appears to be no evidence of any limitations in standing,
> walking or sitting[.] Also on exam today, there were no
> limitations in manipulative skills of the hands.

Id. Thus, as the ALJ noted, Dr. Reiher's statement that

plaintiff can lift up to ten pounds is a recital of plaintiff's

self-report, and is not supported by his own examination.

Further, the medical evidence in the record for the

relevant time period does not support a ten pound weight

restriction on plaintiff's ability to lift. Multiple physical

examinations indicate that plaintiff had full muscle strength in

her extremities. See Tr. 448 (examination on February 13, 2012,

noting "no weakness in strength. ... Strength normal"); Tr. 468

(stating that on April 24, 2012, plaintiff exhibited "5/5"

strength in her upper and lower extremities bilaterally); Tr.

471 (same, on May 17, 2012); Tr. 474 (same, on August 30, 2012);

Tr. 477 (same, on September 13, 2012); Tr. 486 (same, on

December 20, 2012, two months after the date last insured). Even one month prior to the hearing before the ALJ, plaintiff exhibited "5/5" strength in her upper and lower extremities, bilaterally. Tr. 528.

It is clear from the ALJ's decision that she relied on this evidence in determining that plaintiff is capable of lifting more than ten pounds. See Tr. 28-30. An "ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion." McBrayer v. Sec'y of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983). Here, however, the ALJ properly relied on the medical evidence of record, and substantial evidence supports the ALJ's decision to assign Dr. Reiher's opinion "partial weight." Accordingly, the Court finds no error on this point.

**B.  Step Two**

Plaintiff next contends that the ALJ erred at step two of the sequential analysis in finding that plaintiff's bilateral hand conditions were non-severe impairments. See Doc. #26-1 at 9-12. Plaintiff argues that such error was not harmless, as it is "not clear" whether the ALJ considered the effects of these non-severe impairments in the remainder of the sequential analysis. Id. at 12. Defendant responds that the ALJ considered the limitations from all of plaintiff's impairments; further, any error at step two would be harmless, as the ALJ found other

severe impairments and continued through the sequential analysis. See Doc. #28-1 at 10-12.

At step two, the ALJ determined that, through the date last insured, plaintiff suffered from the following severe impairments: mild lumbar and cervical degenerative disc disease; obesity; and fibromyalgia. See Tr. 23. The ALJ further found that

> [t]he record includes evidence of a thyroid disorder, carpal tunnel syndrome and intermittent numbness in the hands; however, the conditions did not cause more than minimal limitations of the claimant's ability to perform basic work functions prior to her date last insured.

Tr. 24.

A step two determination requires the ALJ to determine the medical severity of the plaintiff's impairments. See 20 C.F.R. §404.1520(a)(4)(ii), (c). At this step, the plaintiff carries the burden of establishing that she is disabled, and must provide the evidence necessary for the ALJ to make such a determination. See 20 C.F.R. §404.1512(a). An impairment "is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities[.]" Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). An impairment is "not severe" if it constitutes only a "slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on

the ability to do basic work activities." Id. (citation omitted). A condition will not be considered severe solely because plaintiff has been diagnosed with or treated for a disease or impairment. See Howard v. Comm'r of Soc. Sec., 203 F. Supp. 3d 282, 296 (W.D.N.Y. 2016); Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012).

"At step two, if the ALJ finds an impairment is severe, 'the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.'" Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 402 (D. Conn. 2012) (quoting Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003)), aff'd, 515 F. App'x 32 (2d Cir. 2013). This is because "[u]nder the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." Pompa, 73 F. App'x at 803 (citing 20 C.F.R. §404.1545(e)).

Thus, where the ALJ considers the effects of all impairments at later stages of the analysis, failure to find particular conditions "severe" at step two, even if erroneous, constitutes harmless error. See Rivera v. Colvin, 592 F. App'x 32, 33 (2d Cir. 2015) ("[E]ven assuming that the ALJ erred at step two, this error was harmless, as the ALJ considered both

[plaintiff's] severe and non-severe impairments as he worked through the later steps."); Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) ("Because these [non-severe] conditions were considered during the subsequent steps, any error was harmless." (citation omitted)); Stanton v. Astrue, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) ("[W]e would not identify error warranting remand because the ALJ did identify severe impairments at step two, so that [plaintiff's] claim proceeded through the sequential evaluation process.").

Here, the ALJ explicitly considered the effects of plaintiff's carpal tunnel syndrome and intermittent hand and finger numbness during the step two analysis. The ALJ found that "[g]iven the minimal objective findings and lack of ongoing treatment," these conditions were non-severe. Tr. 24. The ALJ determined that these findings were consistent with the opinion of the consultative examiner and the medical evidence of record. See id.

Further, after finding more than one severe impairment at step two, the ALJ proceeded with the sequential evaluation, during which all impairments were considered. Accordingly, even if the ALJ erred as plaintiff contends, any such error would be harmless, and would not support a reversal of the Commissioner's decision. See Stanton, 370 Fed. App'x at 233 n.1; Rivera, 592 F.

App'x at 33. The ALJ considered the nature and extent of plaintiff's carpal tunnel and hand symptoms throughout the sequential evaluation. See Tr. 23-24, 27, 28. The ALJ assessed plaintiff's testimony regarding pain in her hands and fingers, and considered the treatment she had received for carpal tunnel syndrome and bilateral trigger finger. See Tr. 25. The ALJ's decision reflects that she specifically considered Exhibit 4F (containing treatment records reflecting that plaintiff has trigger finger in her left second finger; numbness in the fingers on her left hand; and carpal tunnel in her left hand); Exhibit 15F (containing multiple treatment notes from October 25, 2011, through December 20, 2012, with only one reference to a complaint of numbness and tingling in plaintiff's left hand); and Exhibit 16F (evaluation and treatment notes for pain in plaintiff's hand; trigger finger; and osteoarthritis in plaintiff's hands). The ALJ's opinion further reflects that she considered "all symptoms," Tr. 26, and "the claimant's treatment history, the objective clinical findings, the claimant's subjective complaints, and all of the medical opinions and evidence of record." Tr. 30. Thus, the Court concludes that there is no merit to plaintiff's contention that "there is no evidence that the ALJ considered the plaintiff's bilateral hand conditions and resulting limitations in fingering and handling

in the remaining steps of the sequential process." Doc. #26-1 at
11.

Accordingly, the Court finds that the ALJ did not err as
contended by plaintiff at step two of the sequential analysis.

### C.    RFC Assessment

Plaintiff argues that the ALJ erred in assessing
plaintiff's RFC, and that the RFC determination is not supported
by substantial evidence. See Doc. #26-1 at 13.[4] Specifically,
plaintiff argues that the ALJ failed to consider plaintiff's
bilateral hand symptoms and plaintiff's complaints of pain in
determining that she had the ability to perform the full range
of light work. See id. at 14-16. Defendant argues that the ALJ
appropriately considered the medical evidence when determining
plaintiff's RFC, and that substantial evidence supports the
ALJ's RFC determination. See Doc. #28-1 at 3.

A claimant's RFC is "the most [she] can still do despite
[her] limitations." 20 C.F.R. §404.1545(a)(1). An ALJ is
"entitled to weigh all of the evidence available to make an RFC

---

[4] In arguing that the ALJ erred in assessing plaintiff's RFC,
plaintiff also repeats her prior argument that there is no
medical evidence of record that evinces plaintiff's ability to
lift up to twenty pounds. See id. at 14. As the Court has
previously rejected this argument, the Court declines to address
it again here.

finding that [is] consistent with the record as a whole." <u>Matta</u>
<u>v. Astrue</u>, 508 F. App'x 53, 56 (2d Cir. 2013) (citation
omitted). "While an ALJ is free to resolve issues of credibility
as to lay testimony or to choose between properly submitted
medical opinions, [s]he is not free to set [her] own expertise
against that of a physician who submitted an opinion to or
testified before [her]." <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2d
Cir. 1998) (quotation marks and citation omitted); <u>see also</u>
<u>Greek v. Colvin</u>, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is
not permitted to substitute [her] own expertise or view of the
medical proof for the treating physician's opinion or for any
competent medical opinion." (citation omitted)).

Here, the ALJ found that through the date last insured,
plaintiff "had the residual functional capacity to perform the
full range of light work as defined in 20 C.F.R.
[§]404.1567(b)." Tr. 26. The ALJ determined that "[t]he evidence
of record supports no greater limitations than a light residual
functional capacity for the relevant period." Tr. 29.

The Regulations define "light work" as

lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds.
Even though the weight lifted may be very little, a job
is in this category when it requires a good deal of
walking or standing, or when it involves sitting most of
the time with some pushing and pulling of arm or leg
controls. To be considered capable of performing a full

or wide range of light work, you must have the ability
to do substantially all of these activities.

20 C.F.R. §404.1567(b); see also Pardee v. Astrue, 631 F. Supp.
2d 200, 208 n.5 (N.D.N.Y. 2009). In finding plaintiff has the
capacity to perform the full range of light work, the ALJ
considered plaintiff's subjective complaints and activities of
daily living; the objective medical evidence; plaintiff's
treatment notes; the opinions of the state reviewing physicians;
and the opinion of the consultative examiner. See Tr. 26-30.

The objective evidence of record prior to the date of last
insured supports the ALJ's RFC determination. A March 14, 2009,
MRI of plaintiff's lumbar spine indicated that plaintiff had
"mild degenerative changes. There is no spinal stenosis or
neural foraminal narrowing." Tr. 441. An MRI report of
plaintiff's cervical spine, dated April 13, 2009, indicates an
"[e]ssentially normal MRI" with "[m]inimal disc desiccation, and
loss of lordosis which is likely positional in nature." Tr. 442.

The record also contains multiple treatment notes
indicating normal physical examinations prior to the date of
last insured. See, e.g., Tr. 448 (stating that on February 13,
2012, plaintiff exhibited "no weakness in strength," "well-
preserved" range of motion, and "strength normal"); Tr. 468
(stating that on April 24, 2012, plaintiff exhibited "5/5"
strength in her upper and lower extremities bilaterally, and

~ 25 ~

upon examination plaintiff is "in no absolute distress"); Tr. 471 (same, on May 17, 2012); Tr. 474 (same, on August 30, 2012); Tr. 477 (same, on September 13, 2012); Tr. 486 (same, on December 20, 2012, two months after the date last insured, and further indicating that plaintiff's "joint pain appears to be well controlled").

The ALJ specifically considered the opinions of the non-examining state agency physicians, and afforded them "some weight." See Tr. 29. At the initial review level, Dr. Virginia Rittner found that plaintiff's symptoms "did not result in significant limitations in [plaintiff's] ability to perform basic work activities" and that her condition "is not severe enough to be considered disabling." Tr. 90. At the reconsideration level, Dr. Firooz Golkar found that plaintiff was capable of medium work. See Tr. 100. Dr. Golkar determined that plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand and/or walk and sit for a total of six hours in an eight hour work day; and had an unlimited ability to lift and carry. See Tr. 98. Dr. Golkar found that plaintiff could only occasionally climb ladders, ropes, and scaffolds; and could frequently climb ramps and stairs; balance; stop; kneel; crouch; and crawl. See Tr. 98-99. Dr. Golkar found that plaintiff had no manipulative limitations. See Tr. 99.

The consultative examiner, Dr. Reiher, opined that plaintiff had "no objective functional limitations on exam." Tr. 347. As discussed above, the ALJ assigned "partial weight" to this opinion. As the ALJ noted, no physician opined that plaintiff is unable to work or is required to lie down during the day, and there is no objective evidence of record that supports any limitations beyond those the ALJ found. See Tr. 29. Indeed, in light of the objective medical evidence and upon "giving maximum credit to the claimant," the ALJ assigned "less weight" to state agency reviewing physician Dr. Golkar's opinion that plaintiff is capable of performing medium work. Tr. 29; see also Tr. 97-100. There is substantial evidence in the record that, prior to the date last insured, plaintiff was able to perform the full range of light work.

As the Court has already determined, there is no merit to plaintiff's claim that the ALJ failed to consider plaintiff's hand symptoms in assessing plaintiff's RFC. The ALJ noted the limited treatment plaintiff received for these symptoms; assessed plaintiff's subjective complaints regarding pain in her hands and fingers; and observed that there were no objective findings or reports of physicians that supported limitations based on plaintiff's hand symptoms. See Tr. 24, 27-30.

Plaintiff argues that her medical records "support a finding of limitations in both the procedural and manipulative functions of work, including limitations in handling and fingering, lifting and carrying, as well as non-exertional impairments." Doc. #26-1 at 13. The Court finds no support for this assertion in the record. Dr. Reiher, the consultative examiner, specifically opined that plaintiff has "no limitations in manipulative skills of the hands." Tr. 347. Dr. Golkar, the state reviewing physician upon reconsideration, found no manipulative limitations, and found plaintiff capable of performing medium work. See Tr. 99-100. Plaintiff testified that the injections she received for treatment of her trigger finger helped her, and that her fingers were "looser" at the time of the hearing. See Tr. 66. Plaintiff's treatment records indicate that plaintiff's numbness in her hands was alleviated by motion and massage. See Tr. 484. As the ALJ noted, plaintiff responded well to treatment. See Tr. 24; see also Tr. 403; Tr. 513.

As discussed in more detail below, the ALJ evaluated plaintiff's subjective complaints of pain and her activities of daily living, and found that plaintiff's subjective complaints were "not entirely credible." Tr. 28, 30. The ALJ specifically found that plaintiff's "pain appears to be largely subjective without objective findings to support disability." Tr. 29. Thus,

plaintiff's argument that the ALJ "failed to consider the effect of the plaintiff's pain on her ability to perform a full range of light work" is without merit. Doc. #26-1 at 15.

Any contention by plaintiff that the ALJ did not consider plaintiff's neck and back pain resulting from a "documented presence of osteoarthritis" and joint pain from polyarthralgia is unfounded. Id. "A RFC determination must account for limitations imposed by both severe and nonsevere impairments." Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012) (citations omitted). Only "medically determinable impairments" are to be considered in assessing an individual's functional limitations that are incorporated into an RFC. Jones-Reid, 934 F. Supp. 2d at 404. Neither osteoarthritis nor polyarthralgia was found to be a medically determinable impairment at step two. The ALJ therefore was not required to consider those conditions in determining plaintiff's RFC. See SSR 96-8P, 1996 WL 374184, at *2 (S.S.A. July 2, 1996) ("The Act requires that an individual's inability to work must result from the individual's physical or mental impairment(s). Therefore, in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that an individual has limitations or

restrictions beyond those caused by his or her medical
impairment(s) including any related symptoms, such as pain[.]").

Finally, plaintiff argues that the ALJ erred by failing to
consider "plaintiff's inability to communicate in English" in
assessing plaintiff's RFC. Doc. #26-1 at 16. Plaintiff provides
no authority in support of this position. The Regulations state:

> If we find that your residual functional capacity does
> not enable you to do any of your past relevant work or
> if we use the procedures in §404.1520(h), we will use
> the same residual functional capacity assessment when we
> decide if you can adjust to any other work. We will look
> at your ability to adjust to other work by considering
> your residual functional capacity and the vocational
> factors of age, education, and work experience, as
> appropriate in your case.

20 C.F.R. §404.1560(c)(1). "The term education also includes how
well [a claimant is] able to communicate in English since this
ability is often acquired or improved by education." 20 C.F.R.
§404.1564(b). Thus, plaintiff's ability to communicate in
English is a factor considered at step five, in determining what
work, if any, she is capable of performing. See id. at (b)(5).
The ALJ properly considered plaintiff's inability to communicate
in English at step five in the analysis. See Tr. 30. Thus, the
Court finds no error on this point.

The Court finds the ALJ did not err as contended by
plaintiff in assessing plaintiff's RFC, and that substantial

evidence supports the ALJ's determination that plaintiff can perform the full range of light work.

### D. Reliance on Medical-Vocational Guidelines

Plaintiff next argues that the ALJ should have been required to obtain the testimony of a vocational expert ("VE"), because the ALJ's RFC determination should have included non-exertional limitations on plaintiff's ability to work. See Doc. #26-1 at 17-18. Plaintiff states that the ALJ failed to consider plaintiff's inability to communicate in English, and "mechanically relied on the Medical Vocational guidelines in determining that there is other work in the national economy that plaintiff can perform." Id. at 18. Defendant responds that the ALJ appropriately relied on the Grids at step five. At step five, the ALJ found: "Based on a residual functional capacity for the full range of light work, the undersigned concludes that, through the date last insured, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical Vocational Rule 202.16." Tr. 31.

"In determining whether a claimant is disabled under the Social Security Act, an ALJ must begin with the Medical-Vocational Guidelines found in Appendix 2 of 20 C.F.R. Subpart P. These guidelines, also known as 'grid rules,' are a set of formulae used to determine whether a given claimant is disabled

or healthy enough to perform work. The rules take into account such factors as age, education level, previous work experience, and physical limitations." Lugo v. Chater, 932 F. Supp. 497, 501 (S.D.N.Y. 1996) (citation omitted), adhered to on reconsideration, (Apr. 19, 1996).

An ALJ may rely solely on the Grids unless they do "not fully account for the claimant's limitations," in which case "the Commissioner must utilize other evidence, such as the testimony of a vocational expert," to determine if the claimant is capable of performing work that is available in significant numbers in the national economy. Taylor v. Barnhart, 83 F. App'x 347, 350 (2d Cir. 2003) (citation omitted). The ALJ is required to consult a vocational expert only if "a claimant has nonexertional limitations that significantly limit the range of work permitted by his exertional limitations[.]" Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (emphasis added) (quotation marks and citation omitted).

Plaintiff argues that the ALJ was required to seek the testimony of a VE because she had additional non-exertional limitations not accounted for in the ALJ's RFC determination. The Court has already determined that there is substantial evidence supporting the ALJ's RFC assessment. Accordingly, the

ALJ was not required to seek the testimony of a VE, and the ALJ's reliance on the Grids was appropriate.

Plaintiff also argues that the "ALJ failed to consider the plaintiff's inability to communicate in English and its effect, if any, on the erosion of the occupational base at the light work level." Doc. #26-1 at 18. Plaintiff does not cite to any support for this allegation, and the Court finds none. The Grids specifically account for an individual's inability to communicate in English. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.00(g) ("The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs. This, in turn, represents substantial vocational scope for younger individuals (age 18–49) even if illiterate or unable to communicate in English."). The ALJ determined that plaintiff was a "younger individual" on the date last insured; and that she is not able to communicate in English. Tr. 30 (citing 20 C.F.R. §404.1563; 20 C.F.R. §404.1568). The ALJ then determined that Rule 202.16 directed a finding of not disabled. See Tr. 31; see also 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.16. The Court finds no error on this point. See Nunez v. Colvin, No. 15CV4957(CSP), 2017 WL 684228, at *18 (S.D.N.Y. Feb. 21, 2017) ("[T]he ALJ found that Plaintiff could perform a wide range of light work, which rendered her

non-disabled under the Grids whether or not she was able to
communicate in English under either Rule 202.16 or 202.20."
(emphasis omitted)).

###    E.    Credibility Assessment

Finally, plaintiff argues that the ALJ erred in her
assessment of plaintiff's credibility. Specifically, plaintiff
claims that the ALJ failed to fully consider -- and discuss --
the factors set forth in 20 C.F.R. §404.1529 and the objective
medical evidence in assessing plaintiff's credibility. <u>See</u> Doc.
#26-1 at 20. Plaintiff also contends that the ALJ "overstated"
the extent to which plaintiff is able to perform her activities
of daily living. <u>Id.</u> at 21. Defendant counters that the ALJ
correctly assessed plaintiff's credibility, with support of
substantial evidence. <u>See</u> Doc. #28-1 at 13-14.

The ALJ's decision states that the plaintiff's "statements
concerning the intensity, persistence and limiting effects of
[her] symptoms are not entirely credible[.]" Tr. 28. The ALJ
determined that plaintiff's "allegations that she is incapable
of all work activity is found to be not entirely credible
because of the overall lack of objective evidence prior to her
date last insured." Tr. 30 (sic). In making this determination
the ALJ pointed to (1) the plaintiff's activities of daily
living as reported in treatment notes, and (2) the objective

medical evidence, as inconsistent with plaintiff's subjective

allegations of pain. See Tr. 28-29.

"Credibility findings of an ALJ are entitled to great

deference and therefore can be reversed only if they are

patently unreasonable." Pietrunti v. Dir., Office of Workers'

Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation

marks and citation omitted). The regulations set forth a two-

step process that the ALJ must follow in evaluating plaintiff's

subjective complaints. First, the ALJ must determine whether the

record demonstrates that the plaintiff possesses a "medically

determinable impairment that could reasonably be expected to

produce [plaintiff's] symptoms, such as pain." 20 C.F.R.

§404.1529(b). Second, the ALJ must assess the credibility of the

plaintiff's complaints regarding "the intensity and persistence

of [plaintiff's] symptoms" to "determine how [the] symptoms

limit [plaintiff's] capacity for work." 20 C.F.R. §404.1529(c).

The ALJ should consider factors relevant to plaintiff's

symptoms, such as pain, including: (1) the claimant's daily

activities; (2) the "location, duration, frequency, and

intensity" of the claimant's pain or other symptoms; (3) any

precipitating or aggravating factors; (4) the "type, dosage,

effectiveness, and side effects of any medication" taken by

claimant to alleviate the pain; (5) "treatment, other than

medication," that plaintiff has received for relief of pain or other symptoms; (6) any other measures plaintiff has used to relieve symptoms; and (7) other factors concerning plaintiff's "functional limitations and restrictions due to pain or other symptoms." Id. The ALJ must consider all evidence in the case record. See SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). The credibility finding "must contain specific reasons ... supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *4.

At the first step of this two-step analysis, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" Tr. 28. At the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" Id. The ALJ's credibility analysis is well-supported by the record. The ALJ properly relied on the full record, including the objective medical evidence, plaintiff's treatment notes, the course of treatment plaintiff has received for her impairments, and plaintiff's activities of daily living.

In assessing plaintiff's symptoms, the ALJ considered the objective medical evidence, and found that it did not support plaintiff's allegations of disability. See Tr. 28. The ALJ stated that plaintiff's records do not show a "significant limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensory loss, or reflex abnormalities associated with intense and disabling pain." Id. The ALJ specifically considered diagnostic tests which showed "only evidence of mild degenerative changes in the lumbar spine;" an MRI of plaintiff's neck that was "normal;" negative EMG testing of the lower right extremity; no remarkable neurological deficits; the ability to ambulate effectively; and a negative rheumatoid factor test. Id. The ALJ noted that any abnormal findings in clinical examinations were "generally limited to tenderness to palpation and muscle tightness" and observed that plaintiff's treatment notes were "essentially normal." Id. The ALJ also considered that plaintiff "underwent only conservative pain management therapy" and that surgery was not performed during the relevant time period. Id. The ALJ observed that although plaintiff complained of persistent pain, treatment provided plaintiff some relief without side effects. See id.

After considering the medical evidence, the ALJ reviewed plaintiff's self-reported daily activities and determined that

they did not support her allegation of disability. See Tr. 28.
Specifically, the ALJ considered plaintiff's ability to function
independently during the day; to prepare simple meals for her
family; to maintain her personal care; and to perform light
household chores. See Tr. 28-29. The ALJ determined that "[t]he
ability to perform these daily activities is contrary to the
allegation of complete and total disability." Tr. 29.

Plaintiff argues that "the ALJ overstated the extent to
which the plaintiff is able to perform these activities." Doc.
#26-1 at 21. "[A]n ALJ must assess subjective evidence in light
of objective medical facts and diagnoses." Williams, 859 F.2d at
261. Plaintiff's activities of daily living reflect that
plaintiff cared for her child when her husband was working. See
Tr. 203. Initially she reported no problems with personal care,
see Tr. 204, but approximately three months later claimed
additional limitations. See Tr. 231.[5] Plaintiff reported that she

_____

[5] Plaintiff completed two questionnaires detailing her activities
of daily living. The first is dated April 7, 2013, see Tr. 203-
211, and the second is dated July 2, 2013. See Tr. 230-237. The
second questionnaire reflects increased limitations in
plaintiff's daily activities. For example, in the first
questionnaire, plaintiff reported that she was able to go out
alone. See Tr. 206. However, several months later, plaintiff
reported that she could not go out alone because "depression and
anxiety kick in." Tr. 233.

shops for groceries, handles money, reads daily, and goes to church. See Tr. 207-208. She stated that she could walk for thirty minutes before tiring, but required her husband's assistance with housework, and had difficulty lifting items. See Tr. 209, 231, 235. Plaintiff also reported to the consultative examiner that she can "dress herself and feed herself and can stand at one time for about one hour and walk on level ground for one to two blocks and is okay with sitting. ... She can perform activities at home including sweeping, mopping, vacuuming, cooking and dishwashing." Tr. 345-46.

The Court finds that the ALJ properly considered the factors listed in 20 C.F.R. §404.1529(c). The ALJ explicitly considered plaintiff's activities of daily living and treatment plan, along with the objective medical evidence, and considered plaintiff's allegations of pain. See Tr. 27.

Where the ALJ has identified a number of specific reasons for her credibility determination, which are supported by substantial evidence in the record, the Court will not second-guess her decision. See Stanton, 370 F. App'x at 234. "It is the function of the Secretary, not [the court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll, 705 F.2d at 642; see also Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)

("The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."). Substantial evidence supports the ALJ's findings as to plaintiff's credibility, and therefore, the Court finds no error.

**VI.  <u>CONCLUSION</u>**

For the reasons set forth herein, the defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #28]** is **GRANTED,** and plaintiff's Motion for Order Reversing the Decision of the Commissioner and/or Remanding the Matter for Hearing **[Doc. #26]** is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 23rd day of August, 2017.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
